# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDRIC MILLS, | 1:09-CV-00206 LJO GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KEN CLARK, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by plea of guilty on October 14, 1987, to second degree murder in violation of Cal. Penal Code § 187. See Petition at 1. Petitioner was sentenced to serve an indeterminate term of fifteen years to life in state prison with the possibility of parole. Id.

On March 7, 2007, a subsequent parole suitability hearing was held before the California Board of Parole Hearings ("BPH" or "Board") to determine Petitioner's eligibility for parole. See

1

Petition, Exhibit 1. Petitioner attended the hearing and was represented by his attorney, Diane Letarte. Id. At the conclusion of the hearing, the BPH denied parole and deferred rehearing for two years. Id. at 61.

On November 29, 2007, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court challenging the BPH's decision. See Answer, Exhibit 1. On February 19, 2008, the petition was denied in a reasoned decision. See Answer, Exhibit 2. Petitioner then filed a habeas petition in the California Court of Appeals, Second Appellate District, on March 24, 2008. See Answer, Exhibit 3. The petition was denied on April 15, 2008. See Answer, Exhibit 4. On May 2, 2008, Petitioner filed a petition for review in the California Supreme Court. See Answer, Exhibit 5. On October 1, 2008, the petition was denied. See Answer, Exhibit 6.

On February 2, 2009, Petitioner filed the instant petition for writ of habeas corpus in this Court. The petition for writ of habeas corpus challenges the 2007 decision of the BPH denying parole. Petitioner contends there is no evidence to show he is currently a dangerous risk to society, and the Board's continued reliance on the commitment offense and circumstances surrounding the commitment offense violates the Fifth and Fourteenth Amendments. On May 12, 2009, Respondent filed an answer to the petition. Petitioner filed a traverse to Respondent's answer on June 10, 2009.

## FACTUAL BACKGROUND[1]

Sometime between May 11, 1987, and May 18, 1987, in the City of Long Beach, Petitioner stabbed and killed Eric Pinager. The victim's mother, Jacquelyn Pinager, filed a missing persons report regarding the victim. Jacquelyn had discovered a blood-stained couch which had been in Pinager's residence and taken out and placed in a trash bin. The investigators focused on Petitioner, who was arrested two months later and admitted his guilt.

Petitioner stated he had gotten into a fight with Pinager. During the fight, a glass table broke. Petitioner used a broken piece of glass and stabbed him the victim four times. He then

---

[1] The information is derived from the factual summary as set forth in the parole hearing proceedings. See Petition, Exhibit 1 at 15-16.

2

wrapped the victim in a blanket while still alive, and placed him in a closet. The following day, Petitioner placed Pinegar in a trash bin and authorities later determined that the body was not recoverable. About a week after the crime, Petitioner withdrew all the money from Pinager's bank account.

**DISCUSSION**

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for her habeas petition because she meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

     As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

     Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

     "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

     Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the

states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

As to these procedural protections, Petitioner was provided with all that is required. He was given advanced written notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard, representation by an attorney, and a written decision explaining the reasons parole was denied.

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the

1  prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454
2  (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of
3  Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); Irons v. Carey, 505 F.3d 846,
4  851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s]
5  clearly established that a parole board's decision deprives a prisoner of due process with respect
6  to this interest if the board's decision is not supported by 'some evidence in the record,' or is
7  'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination
8  was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and
9  regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at
10 851. Here, the Court must look to California law and review the record. In reviewing the record
11 and determining whether the "some evidence" standard is met, the Court need not examine the
12 entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass,
13 461 F.3d at 1128.

14     Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

19 In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not
20 in and of itself provide some evidence of current dangerousness to the public unless the record
21 also establishes that something in the prisoner's pre- or post-incarceration history, or his or her
22 current demeanor and mental state, indicates that the implications regarding the prisoner's
23 dangerousness that derive from his or her commission of the commitment offense remain
24 probative to the statutory determination of a continuing threat to public safety." Id. at 1214.
25     In denying parole in this case, the Board based its decision on the following factors: 1)
26 The nature and gravity of the commitment offense; 2) Previous criminal record; and 3)
27 Institutional behavior. See Petition, Exhibit 1 at 54-61.
28     First, the Board relied heavily on the facts of the commitment offense in determining that

Petitioner committed the offense in an especially heinous, atrocious or cruel manner.[2] The Board found that Petitioner committed the offense in a manner that demonstrated a callous disregard for human suffering. 15 Cal. Code Regs. § 2402(c)(1)(D). Petitioner repeatedly stabbed the victim, then bound him up in a blanket while still living, and placed him in a closet. As noted by the superior court, "Petitioner knowingly left [the victim] in the closet, causing the victim to endure prolonged pain and suffering as he slowly bled to death." See Answer, Exhibit B. In addition, the superior court found there was some evidence supporting the Board's finding that Petitioner's actions were dispassionate and calculated. 15 Cal. Code Regs. § 2402(c)(1)(B). Petitioner, after stabbing the victim, "took the still living victim, wrapped him in a blanket, shoved him in a closet, and left him there to die. Subsequently, the Petitioner disposed of the victim's body by throwing him in the trash and emptied his bank account." See Answer, Exhibit B. In sum, the superior court's determination that some evidence supported the Board's finding that the offense was especially heinous, atrocious or cruel as to be a sufficient basis to deny parole was not unreasonable.

The Board also noted Petitioner's non-violent prior offenses. See Petition, Exhibit 1 at 55. Petitioner had been convicted of stealing as a juvenile and driving under the influence of alcohol as an adult. See Petition, Exhibit 1 at 19-20. While not an enumerated circumstance indicating unsuitability, the offenses were relevant to determining whether Petitioner still posed an unreasonable risk of danger to the public. 15 Cal. Code Regs. § 2402(b).

Finally, the Board considered Petitioner's institutional behavior. 15 Cal. Code Regs. § 2402(c)(6). The Board noted that Petitioner had received six serious rules violations ("CDC

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
   (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
   (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
   (C) The victim was abused, defiled or mutilated during or after the offense.
   (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
   (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

115") during his incarceration, and the most recent one was received for disruptive behavior for threatening other inmates and occurred in 2002 during the most recent review period. See Petition, Exhibit 1 at 27. In addition, Petitioner had received 15 counseling chronos ("CDC 128"), the most recent one being in 2005 for failing to report. Id. at 29. The Board concluded Petitioner's disciplinary problems showed he still posed an unreasonable risk of danger to the public if released. The superior court found some evidence supported this finding, and the superior court's conclusion is not unreasonable given the relatively recent threats of violence made by Petitioner.

      The Board also considered the positive factors favoring parole release. Petitioner's psychological report was favorable, he had viable parole plans as far as a residence, and he possessed marketable skills in air conditioning and refrigeration. The Board also commended Petitioner for his programming and college course work. Nevertheless, the Board found Petitioner's gains were relatively recent, and in light of the negative factors, he remained an unreasonable risk of danger to the public. The state court finding that some evidence supported this determination was not unreasonable.

      Petitioner argues that the Board's continuing reliance on the unchanging circumstances of the underlying offense violates his due process rights. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." As discussed above, however, the circumstances of the offense, while significant, were not the only reasons for the Board's decision. The Board found Petitioner's prior criminal history and especially his recent serious disciplinary problems to be of great weight in concluding Petitioner would pose an unreasonable danger to public safety should he be presently released.

      In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State Court proceeding." 28 U.S.C. § 2254(d).

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __July 30, 2009__        _____/s/ Gary S. Austin_____
                                UNITED STATES MAGISTRATE JUDGE